**Edward A. BRANSTAD and Monroe Branstad, Plaintiffs,**

v.

**Ann VENEMAN, Secretary of the United States Department of Agriculture, Defendant.**

**Nos. C 00–3072–MWB, C 01–3030–MWB.**

United States District Court, N.D. Iowa, Central Division.

Nov. 5, 2002.

Thomas A. Lawler, Lawler & Swanson, PLC, Parkersburg, IA, for plaintiffs.

Kandice A. Wilcox, U.S. Attorney's Office, Cedar Rapdis, IA, for defendant.

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFFS' APPLICATIONS FOR ATTORNEY FEES AND EXPENSES

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .946
   A.   The Actions For Judicial Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .946
      1.  Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .946
      2.  The court's ruling . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .947
   B.   The Fee Applications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .948
      1.  The Branstads' applications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .948
         a.  Financial eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .948
         b.  Enhanced hourly rate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .949
         c.  Fees claimed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .949
      2.  The Secretary's Combined Resistance . . . . . . . . . . . . . . . . . . . . . . . . . .949
      3.  The Branstads' Reply . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .950

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .951
   A.   Eligibility For An Award Of Fees And Expenses . . . . . . . . . . . . . . . . . . . . . .951
      1.  Financial eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .951
      2.  "Prevailing party" status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .952
         a.  Sullivan v. Hudson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .952
         b.  The nature of the claims and the relief obtained . . . . . . . . . . . . . . .954
            i.  The effect of a remand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .954
           ii.  Determination of "prevailing party" status . . . . . . . . . . . . . . . . .955
          iii.  Procedural victories . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .956
   B.   Other Challenges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .958

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .959

## I. INTRODUCTION

### A. The Actions For Judicial Review

#### 1. Background

These separate actions for judicial review of agency action of the United States Department of Agriculture (USDA) come back before the court on the plaintiffs' application in each case for attorney fees and expenses pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. Although these two cases have never been formally consolidated, the court finds that, as with trial on the merits, a consolidated ruling on the fee applications is appropriate. This is so, because the Secretary resists any fee award at all or, in the alternative, resists an award in the amount requested, on essentially the same grounds in both cases.

These actions involved review of agency determinations that the plaintiffs violated the "Swampbuster" Act, 16 U.S.C. §§ 3821–24, when they purportedly "converted" "wetlands" by repairing an existing tile drainage system on their farmland. The actions involved two adjacent tracts of farmland, which are located in Winnebago County, Iowa. Tract # 2024, which plaintiff Monroe Branstad purchased in 1995, is the subject of Case No. C 00–3072–MWB, and Tract # 1475, which plaintiff Edward

Branstad, Monroe's father, also purchased in 1995, is the subject of Case No. C 01–3030–MWB. Monroe and Edward Branstad are both "operators" of both tracts for purposes of the pertinent statute and USDA regulations. The factual background to these cases was discussed extensively in the court's prior rulings granting the plaintiffs' motions for preliminary injunctions on enforcement actions, *see Branstad v. Glickman,* 118 F.Supp.2d 925 (N.D.Iowa 2000) (*Branstad I*) (preliminary injunction on enforcement action in Case No. C 00–3072–MWB); *Branstad v. Veneman,* 145 F.Supp.2d 1011 (N.D.Iowa 2001) (*Branstad II*) (preliminary injunction on enforcement action in Case No. C 01–3030–MWB), and trial on the merits on written submissions. *See Branstad v. Veneman,* 212 F.Supp.2d 976 (N.D.Iowa 2002) (*Branstad III*).

### 2. The court's ruling

After trial on the merits, the court concluded that the "final" agency determinations in the two cases could not stand upon judicial review. In Case No. C 00–3072–MWB, concerning Tract # 2024, the court concluded that the Acting Director's conclusion, on Director Review, that the Branstads' administrative appeal was "mooted" by their entry into a Wetland Restoration Agreement for Tract # 2024 was arbitrary and capricious, an abuse of discretion, and contrary to law, in that it failed to recognize that the agency had acknowledged the Branstads' right to pursue their administrative appeal notwithstanding entry into the restoration agreement, the restoration agreement did *not* contain any concessions that there were "wetlands" on the tract or that they had been "converted," and a "good faith" exemption from denial of benefits on the basis of restoration would not expunge the "wetlands" violation, did not resolve the underlying issues, which are whether or not the agency's "wetlands" and "conversion" determinations were cor-

rect, or allow the Branstads' repairs of the drainage system to stand. Similarly, the court concluded that the Acting Director's conclusion that prior wetland determinations in 1987 and 1991 were "unappealable" was arbitrary and capricious, an abuse of discretion, and contrary to law. The record evidence, the court found, was that the 1991 determination superseded the 1987 determination. Moreover, under the statutory and regulatory regime applicable to the parties, the 1991 determination was "valid" only until a person affected by the certification requested review of the certification by the Secretary, and the Branstads were such "persons." The court also concluded that the Acting Director's determinations were contrary to the statutory provisions requiring consideration of whether the wetlands had been converted prior to December 23, 1985, and prohibiting the denial of benefits based on such a prior conversion or repairs to such a prior conversion, where the return of "wetlands" characteristics are the result of a lack of maintenance to such a prior conversion.

Similarly, in Case No. C 01–3030–MWB, involving Tract # 1475, the court concluded that the "final" agency decision denying consideration of the Branstads' administrative appeal on the ground that the appeal was untimely was arbitrary and capricious, an abuse of discretion, and contrary to law. The court found that the Director inexplicably changed the standard from whether there were "extenuating circumstances" for failure to file a timely administrative appeal to whether there was "good cause" for the failure, then failed to address properly whether such "good cause" or "extenuating circumstances" had been shown on the record presented. To the extent that the Director could be construed to have relied on the failure of the Branstads' counsel to mail the appeal request to the correct address, the court concluded that such a clerical error, standing alone, was

not sufficient basis for denying the appeal, and the uncontroverted record demonstrated that the Branstads' counsel pursued with reasonable diligence both the original appeal and efforts to obtain consideration of that appeal once it had been found untimely.

As to relief, in Case No. C 00–3072–MWB, the court found and declared (1) that the Branstads' administrative appeal was not mooted by the Wetland Restoration Agreement for Tract # 2024, and the agency's final determination to the contrary was arbitrary and capricious, an abuse of discretion, and contrary to law; and (2) that the 1987 and 1991 wetland determinations were subject to "appeal" in the administrative proceedings, and the agency's final determination to the contrary was arbitrary and capricious, an abuse of discretion, and contrary to law. The court also vacated in its entirety the Director Review Determination as to Tract # 2024 and remanded the case for agency action in conformity with the court's judgment. Finally, the court enjoined any and all enforcement actions of the USDA with regard to any wetland violation on Tract # 2024. In Case No. C 01–3030–MWB, the court also vacated the Director's February 13, 2001, decision denying the Branstads' request for consideration of their untimely administrative appeal regarding Tract # 1475 on the basis of "extenuating circumstances" or "good cause" and that case was remanded to the NAD for consideration of the Branstads' administrative appeal of the "wetlands" and "conversion" determinations regarding Tract # 1475 on the merits. The court also enjoined any and all enforcement actions of the USDA with regard to any wetland violation on Tract # 1475 until the conclusion of the administrative appeal. Judgment in both cases entered accordingly.

In its opinion after trial on the merits, the court noted that it had not lost sight of the fact that the Branstads had prayed for a finding that the USDA's position was not "substantially justified" in either case and that they are, therefore, entitled to an award of attorney fees and costs. However, at that time, the court stated its belief that both the necessary findings if any fees are to be awarded under the EAJA, and the amount of such fees, if they are to be awarded, should be reserved for consideration upon an application for attorney fees pursuant to N.D. IA. L.R. 54.2. Such a fee application in each case is now before the court.

### B. The Fee Applications

The Branstads filed an Application for Attorney Fees and Expenses as Well as Costs in each case on July 29, 2002. After an extension of time to do so, the Secretary filed a Combined Resistance to the two applications on August 23, 2002. The Branstads filed an identical Reply Brief in each case on August 30, 2002, in further support of their applications, including in each case an Amendment to Application for Attorney Fees, claiming additional fees for preparing the Reply Brief.

### 1. The Branstads' applications

### a. Financial eligibility

The Branstads argue that they are eligible for an award of fees and expenses in each case, because Edward Branstad's net worth did not exceed $2,000,000, and the net worth of Monroe Branstad's unincorporated business did not exceed $7,000,000, nor did that business employ over 500 employees, at the time that the actions were filed. They also contend that they are entitled to an award of fees and expenses, because the Secretary's position in the two cases was not substantially justified. In support of this contention, they rely primarily on the court's conclusions in the rulings on their requests for preliminary injunctions and trial on the merits.

They also contend that the Secretary's summary judgment motions in each case "served no purpose," because they were based on the same record as the court's final decision on trial on the merits and were heard by the same judge.

### b. Enhanced hourly rate

As to the amount of fees claimed, the Branstads argue that enhancement above the statutory hourly rate of $125 is justified, because of increases in the cost of living, as shown by the consumer price index since the last amendment of 28 U.S.C. § 2412. Specifically, they contend that the cost of living adjustment in the hourly rate would be $128.63 for 1996; $131.59 for 1997; $133.70 for 1998; $136.64 for 1999; $141.29 for 2000; $145.25 for 2001; and $146.99 for 2002. They contend, further, that their counsel possessed distinct knowledge necessary to plead their cases, because his area of concentration for his law practice is agricultural law, as indicated by various memberships in legal organizations, subscriptions to legal publications, and his client base. Thus, they seek attorney fees for one of their attorneys at his full regular hourly rate of $175 per hour, and for a second attorney, in Case No. C 00–3072–MWB only, at $150 per hour for legal work and $65 per hour for administrative tasks.

### c. Fees claimed

In Case No. C 00–3072–MWB, the Branstads claim for their lead attorney 126.75 hours at $175 per hour, for a total fee claim of $22,181.25, see Case No. C 00–3072–MWB, Application for Attorney Fees and Expenses, Attachment C, and for their second attorney, they claim 41.4 hours at $150 per hour ($6,210), and 4.4 hours at $65 per hour ($286), for a total fee claim of

$6,470.50.[1] See id., Attachment F. The time expended by the lead attorney is also broken down into various categories of tasks in Attachment D to the fee application in that case. In addition, the Branstads claim attorney expenses for their lead attorney, including filing fees, postage, fees for service of process, Lexis–Nexis research fees, and a surety bond for the preliminary injunction, totalling $1,300.34, see id., Attachment E, and expenses for their second attorney totalling $145.78. See id., Attachment F. In Case No. C 01–3030–MWB, the Branstads claim 19.82 hours at $175 per hour for their attorney for a total fee claim of $3,468.50. See Case No. C 01–3030–MWB, Application for Attorney Fees and Expenses, Attachment C. In addition, the Branstads claim attorney expenses in that case in the amount of $169.40. See id., Attachment E.

### 2. The Secretary's Combined Resistance

In her Combined Resistance, the Secretary acknowledges that the Branstads' fee claim is timely, in that it was filed within the period after judgment was entered identified in the statute. However, she nevertheless disputes the Branstads' eligibility for or entitlement to fees pursuant to the EAJA on a number of grounds. First, the Secretary argues that it is not clear that Monroe Branstad meets the financial guidelines under 28 U.S.C. § 2412(d)(2)(B) for an award of fees, because the application includes financial information pertaining to Edward Branstad and Branstad Farms, but the named plaintiffs are Edward and Monroe Branstad. The Secretary argues that, in the absence of evidence establishing that Monroe Branstad meets the financial eligibility require-

---

1. One item claimed by the second attorney is a telephone call on March 21, 2000, for .3 hours at $150 per hour, which would be a charge of $45, but the item was charged as $19.50, which would be .3 hours at $65 per hour.

ments, his request for fees should be denied. Next, the Secretary argues that the Branstads are not "prevailing parties," as required for an award of fees under The EAJA, because merely obtaining a remand to the agency does not generally make someone a "prevailing party," citing *Sullivan v. Hudson*, 490 U.S. 877, 886–87, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). Instead, the Secretary argues that the Branstads will only be "prevailing parties" if they obtain a favorable determination on the ultimate question of whether they improperly converted wetlands on the two tracts in question. Moreover, even if the Branstads meet the financial eligibility and "prevailing party" requirements, the Secretary argues that her position was "substantially justified," and so no fees should be awarded. The Secretary argues that this court's rulings contrary to the Secretary's position on various issues do not necessarily establish that her position was not "substantially justified." Rather, the Secretary asserts that, even if her position was wrong on various issues—which the Secretary does not concede—her position was substantially justified by both the law pertaining to review of final agency action and by the facts of this case, notwithstanding this court's disagreements. However, if the court determines that the Branstads are eligible for and entitled to fees, the Secretary also challenges the amount of the fees they claim. Specifically, the Secretary argues (1) that the Branstads improperly claim fees for time spent by counsel during the administrative proceedings, or at least improperly claim fees incurred prior to the NAD appeal for Tract # 2024; (2) that they claim fees for both counsel for conversations between co-counsel, which is unfairly duplicative; and (3) that they claim fees at an hourly rate in excess of the statutory rate without establishing that *both* counsel had necessary expertise or that there was a lack of qualified attorneys in Iowa for the proceedings involved here,

even if they have adequate evidence of an increase in the cost of living and the expertise of lead counsel. Therefore, the Secretary contends that any fee award should be based on the statutory rate of $125 per hour.

### 3. The Branstads' Reply

In their Reply, the Branstads respond to what they assert were unanticipated arguments by the Secretary. First, they contend that financial information for Monroe Branstad *has* been provided, because all of the information concerning "Branstad Farms" was signed by Monroe Branstad and it should have been clear from the information provided and the Secretary's own administrative record that Monroe Branstad "does business as" Branstad Farms, which is a sole proprietorship farming business. Next, as to the Secretary's contention that the Branstads are not "prevailing parties," because they only obtained remand of their actions to the agency, the Branstads argue that the *Sullivan v. Hudson* case on which the Secretary relies plainly applies only to a remand to the Social Security Administration, not a remand to the USDA. They point out that there is no statutory provision allowing the court to retain jurisdiction over the remands to the USDA in these two cases as there is in Social Security cases; rather, they will have to initiate new actions to seek further judicial review of any agency determination on remand, if required. Finally, they argue that fees incurred during the administrative proceedings should be awarded from the time that the administrative proceedings became an "adversary adjudication," which they argue was the situation from the point at which the USDA made an agency determination that the plaintiffs had "converted" wetlands. Consequently, they argue that all of the time included in the fee application should be allowed.

## II. LEGAL ANALYSIS

As the Eighth Circuit Court of Appeals has explained,

> EAJA allows most parties who prevail against the United States in civil litigation to recover costs. *See* 28 U.S.C. § 2412(a) (1994). EAJA also allows those parties to recover attorney fees and some litigation expenses if the Government fails to prove that its position in the litigation "was substantially justified or that special circumstances make an award unjust." *Id.* § 2412(d)(1)(A); *see also Friends of the Boundary Waters Wilderness v. Thomas,* 53 F.3d 881, 885 (8th Cir.1995) (stating the Government bears the burden of proving its position was substantially justified).

*Herman v. Schwent,* 177 F.3d 1063, 1065 (8th Cir.1999). More specifically, the statute states the following:

> *Except as otherwise provided by statute,* a court *shall* award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, *unless* the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added); *see also Yarbrough v. Cuomo,* 209 F.3d 700, 703 (8th Cir.2000) ("The EAJA directs courts to award fees and other expenses to prevailing parties unless the United States' position was substantially justified or special circumstances would make an award unjust. *See* 28 U.S.C. § 2412(d)(1)(A)."). Although the statute is written in terms of entitlement to fees *except* when certain conditions are met,

the Secretary challenges the award of attorney fees and expenses to the plaintiffs in these cases on numerous grounds. Therefore, the court must consider those challenges in turn, unless one of those challenges proves to be an insuperable bar to an award of attorney fees and expenses in these cases.

### A. Eligibility For An Award Of Fees And Expenses

The court will consider first the Secretary's challenges to the Branstads' eligibility for an award of fees and expenses under The EAJA. As noted above, the Secretary challenges the Branstads' eligibility on two grounds: financial eligibility and "prevailing party" status.

### 1. Financial eligibility

█ Some time ago, the Eighth Circuit Court of Appeals recognized that, in addition to any other requirements, "[t]he EAJA also requires 'parties' to meet certain financial requirements in order to invoke its provisions, but these financial requirements are extremely generous." *United States v. 341.45 Acres of Land,* 751 F.2d 924, 931 n. 6 (8th Cir.1984) (citing 28 U.S.C. § 2412(d)(2)(B) (Supp. V 1981)). These financial requirements remain "generous," notwithstanding that they have been amended since the court so described them. *See* 28 U.S.C. § 2412(d)(2)(B) (as amended in 1985 to increase the net worth limitations). At present, with certain exceptions not applicable here, the financial eligibility requirements are defined as follows:

> " '[P]arty' means (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the

civil action was filed, and which had not more than 500 employees at the time the civil action was filed."

28 U.S.C. § 2412(d)(2)(B). While the Secretary apparently concedes that Edward Branstad has established that he met the financial requirements for an "individual," she contends that Monroe Branstad, the other named party, has not provided any financial eligibility information, because he has submitted only financial and employment information concerning "Branstad Farms." The Branstads argue that "Branstad Farms" is the unincorporated sole proprietorship farming business of Monroe Branstad, and that the USDA knows it, as demonstrated by the administrative record in this case, so that Monroe Branstad has provided an accurate record of his net financial worth.

The court agrees with the Branstads that adequate financial records have been provided by both plaintiffs to demonstrate that they meet the "generous" financial eligibility requirements of the EAJA. The financial records submitted by Edward Branstad demonstrate that he is an "individual" meeting the financial requirements of 28 U.S.C. § 2412(d)(2)(B)(i). Similarly, the administrative record in these cases and the specific financial records submitted in support of the fee claim demonstrate that Monroe Branstad is an "owner of an unincorporated business" meeting the requirements of 28 U.S.C. § 2412(d)(2)(B)(ii). There is no realistic confusion about the identity of Monroe Branstad as the plaintiff in this action and "Branstad Farms," which is his sole proprietorship farming business, not some unknown or unrelated entity. The Secretary's challenge to Monroe Branstad's financial eligibility for a fee award pursuant to the EAJA is without merit.

## 2. *"Prevailing party" status*

Next, the government contends that the Branstads are not "prevailing par-

ties" within the meaning of the EAJA, because they only obtained a remand to the agency for further action on the merits in each case, which is merely a procedural victory, not some final, favorable disposition. This asserted bar to the Branstads' eligibility for an EAJA award presents a closer question than the Secretary's argument about financial eligibility.

### a. *Sullivan v. Hudson*

The Secretary states that *Sullivan v. Hudson*, 490 U.S. 877, 886–887, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), stands for the proposition that "[i]t is well settled that a remand for further agency action, as has occurred in both of the present cases, is insufficient to establish one's status as a prevailing party for purposes of requesting attorney fees and costs under EAJA." However, the precise language used by the Supreme Court in *Hudson* was more restrictive: "We think it clear that under these principles *a Social Security claimant* would not, as a general matter, be a prevailing party within the meaning of the EAJA merely because a court had remanded the action to the agency for further proceedings." *Hudson*, 490 U.S. at 887, 109 S.Ct. 2248 (emphasis added). Thus, in *Hudson*, the Supreme Court specifically referred to "a Social Security claimant," not to any person who obtains a remand to any federal agency upon judicial review of an agency determination. The cases now before this court do not involve judicial review of denial of Social Security benefits.

Moreover, based on its rationale, the portion of *Hudson* on which the Secretary relies is not instructive outside of the Social Security context. First, the "principles" that led the Court to the conclusion relied upon by the Secretary here were *also* unique to the Social Security context. The Court explained, first, that "[a]pplica-

tion of this provision [28 U.S.C. § 2412(d)(1)(A) ] to respondent's situation here requires brief consideration of the structure of administrative proceedings and judicial review *under the Social Security Act." Hudson*, 490 U.S. at 884, 109 S.Ct. 2248 (emphasis added). The Court then noted that, "[a]s provisions for judicial review of agency action go, [42 U.S.C.] § 405(g) [the provision for judicial review of Social Security determinations] is somewhat unusual," because "[t]he detailed provisions for the transfer of proceedings from the courts to the Secretary and for the filing of the Secretary's subsequent findings with the court suggest a degree of direct interaction between a federal court and an administrative agency alien to traditional review of agency action under the Administrative Procedure Act." *Id.* at 885, 109 S.Ct. 2248. The Court concluded that "[t]wo points important to the application of the EAJA emerge from the interaction of the mechanisms for judicial review of Social Security benefits and determinations and the EAJA." *Id.* at 886, 109 S.Ct. 2248. The first was that, *in Social Security cases*, "where a court's remand to the agency for further administrative proceedings does not necessarily dictate the receipt of benefits, the claimant will not normally attain 'prevailing party' status within the meaning of § 2412(d)(1)(A) until after the result of the administrative proceedings is known." *Id.* The second was that, "in order to be considered a prevailing party, a plaintiff must achieve some of the benefit sought in bringing the action." *Id.* at 887, 109 S.Ct. 2248. Thus, it was these two principles that made it clear that *a Social Security claimant* was not, as a general matter, a "prevailing party" within the meaning of the EAJA, where he or she obtained only a remand of the action to the agency for further proceedings. *Id.* Nothing in *Hudson* suggests that the Court intended to state a general rule outside of the Social Security context. In the pres-

ent actions, judicial review was not pursuant to the "unusual" and "detailed" provisions of the Social Security Act, but was instead pursuant to the more general provisions of the Administrative Procedure Act, which the Court in *Hudson* specifically distinguished. Thus, the "degree of direct interaction between a federal court and an administrative agency" at issue in *Hudson* is "alien" to the judicial review at issue here. *Hudson*, 490 U.S. at 885, 109 S.Ct. 2248. Therefore, the language from *Hudson* upon which the Secretary here relies appears to be inapposite.

Furthermore, in *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), the Supreme Court concluded that the language in *Hudson* upon which the Secretary here relies was not only *dicta*, but was not supported by the cases that the Court had cited in support of it. As the Supreme Court explained,

> Dicta in *Hudson* stated that "a Social Security claimant would not, as a general matter, be a prevailing party within the meaning of the EAJA merely because a court had remanded the action to the agency for further proceedings." 490 U.S., at 887, 109 S. Ct., at 2255. But that statement (like the holding of the case)· simply failed to recognize the distinction between a sentence-four remand, which terminates the litigation with victory for the plaintiff, and a sentence-six remand, which does not. The sharp distinction between the two types of remand had not been made in the lower court opinions in *Hudson, see Hudson v. Secretary of Health and Human Services*, 839 F.2d 1453 (C.A.11 1988); App. to Pet. for Cert. in *Sullivan v. Hudson*, O.T.1988, No. 616, pp. 17a–20a (setting forth unpublished District Court opinion), was not included in the question presented for decision, and was mentioned for the first time in the closing pages of the Secretary's reply brief, see Reply Brief for Petitioner in *Sulli-*

van v. Hudson, O.T.1988, No. 616, pp. 14–17. It is only decisions after *Hudson*—specifically *[Sullivan v.] Finkelstein*, [496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990),] and *Melkonyan [v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991) ]—which establish that the sentence-four, sentence-six distinction is crucial to the structure of judicial review established under § 405(g). *See Finkelstein*, 496 U.S., at 626, 110 S.Ct., at 2664; *Melkonyan*, 501 U.S., at 97–98, 111 S.Ct., at 2162–2163.

*Hudson*'s dicta that remand does not generally confer prevailing-party status relied on three cases, none of which supports that proposition as applied to sentence-four remands. *Hanrahan v. Hampton*, 446 U.S. 754, 758–759, 100 S.Ct. 1987, 1990, 64 L.Ed.2d 670 (1980), rejected an assertion of prevailing-party status, not by virtue of having secured a remand, but by virtue of having obtained a favorable procedural ruling (the reversal on appeal of a directed verdict) during the course of the judicial proceedings. *Hewitt v. Helms*, 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), held that a plaintiff does not become a prevailing party merely by obtaining "a favorable judicial statement of law in the course of litigation that results in judgment against the plaintiff," *id.*, at 763, 107 S.Ct., at 2677 (emphasis added). (A sentence-four remand, of course, is a judgment for the plaintiff.) And the third case cited in *Hudson*, *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), affirmatively supports the proposition that a

party who wins a sentence-four remand order is a prevailing party. *Garland* held that status to have been obtained "[i]f the plaintiff has succeeded on any significant issue in litigation which achieve[d] some of the benefit ... sought in bringing suit." *Id.*, at 791–792, 109 S.Ct., at 1493 (citation and internal quotation marks omitted). Obtaining a sentence-four judgment reversing the Secretary's denial of benefits certainly meets this description. *See also Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

*Schaefer*, 509 U.S. at 300–302, 113 S.Ct. 2625 (footnote omitted). Thus, *Hudson* is not even controlling on the proposition for which it is cited in Social Security cases, and certainly is not so outside of that context.

### b. The nature of the claims and the relief obtained

**i. The effect of a remand.** The Supreme Court's decision in *Schaefer* made clear that it is not the fact of remand, standing alone, that deprives parties like the Branstads of "prevailing party" status, as the Secretary seems to argue here, notwithstanding apparent support for that broad proposition in *Hudson*. *See Schaefer*, 509 U.S. at 301–02, 113 S.Ct. 2625 (citing *Hanrahan v. Hampton*, 446 U.S. 754, 758–759, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), as involving rejection of an assertion of prevailing-party status, "not by virtue of having secured a remand, but by virtue of having obtained a favorable procedural ruling (the reversal on appeal of a directed verdict) during the course of the judicial proceedings").[2] Nevertheless,

**2.** The court recognizes that at least one post-*Schaefer* decision of the Sixth Circuit Court of Appeals appears to adhere to *Hudson*—and to do so outside of the Social Security context— on the basis of a pre-*Schaefer* decision. In *E.W. Grobbel Sons, Inc. v. NLRB*, 176 F.3d 875 (6th Cir.1999), the court reiterated its

prior holding "that '[r]emand is not the final judgment for EAJA purposes.'" *E.W. Grobbel Sons, Inc.*, 176 F.3d at 877 (1999) (quoting *Buck v. Secretary*, 923 F.2d 1200, 1204 (6th Cir.1991)). However, the court's rationale for concluding that the remand order was not a "final decision" and did not make the plain-

the Secretary also challenges the Branstads' eligibility for fees on the ground that the Branstads will only be "prevailing parties" if they obtain a favorable determination on the ultimate question of whether they improperly converted wetlands on the two tracts in question. Thus, the Secretary's "eligibility" challenge also raises the question of whether or not the Branstads are "prevailing parties" within the meaning of The EAJA, in light of *the nature of the claims asserted on judicial review* and *the remand of these actions to the agency for consideration of the merits of their administrative appeals of the "wetlands conversion" determinations.*

*ii. Determination of "prevailing party" status.* "Prevailing party" status involves mixed questions of law and fact, but the ultimate question of whether or not a litigant is a "prevailing party" is one of law. *See Yarbrough v. Cuomo,* 209 F.3d 700, 703 (8th Cir.2000) ("We review for clear error the court's factual findings underlying its determination of prevailing party status, but we consider de novo the legal question whether those facts suffice to render the plaintiff a prevailing party.") (citing *Jenkins v. Missouri,* 127 F.3d 709, 713 (8th Cir.1997)); *Jenkins,* 127 F.3d at 713 ("[W]hile abuse of discretion governs in reviewing fee awards, the question of prevailing party status, a statutory term, presents a legal issue for decision, which we review de novo.").

The Eighth Circuit Court of Appeals has explained that a plaintiff is considered a "prevailing party" for purposes of EAJA fee awards "when he obtains 'actual relief

on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff' ' at the time of a settlement or judgment. *Yarbrough,* 209 F.3d at 703 (quoting this standard from *Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), in a case that had resulted in settlement); *see also Farrar,* 506 U.S. at 111, 113 S.Ct. 566 (stating this standard as applicable in cases resulting in judgment or settlement). Somewhat more expansively, the Supreme Court has explained the applicable standard in the context of a civil rights case as follows:

[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, *Hewitt [v. Helms,* 482 U.S. 755,] 760, 107 S.Ct. 2672, 96 L.Ed.2d 654 [ (1987) ], or comparable relief through a consent decree or settlement, *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. *See Hewitt, supra,* at 764, 107 S.Ct. 2672. Otherwise the judgment or settlement cannot be said to "affec[t] the behavior of the defendant toward the plaintiff." *Rhodes [v. Stewart,* 488 U.S. 1,] 4, 109 S.Ct. 202, 102 L.Ed.2d 1 [ (1988) (*per curiam* ) ]. Only under these circumstances can civil rights litigation effect "the material alteration of the legal rela-

tiff a "prevailing party" is not as inconsistent with *Schaefer* as the language quoted just above sounds. Rather, the court concluded that its "remand order contemplated further administrative proceedings; we did not affirm, modify, or reverse the Board's findings and conclusions on the two important issues remanded." *Id.* Instead, the court "retained jurisdiction and on these issues did not estab-

lish Grobbel a prevailing party under EAJA." *Id.* at 877–78. Thus, the court's determination of whether or not the plaintiff was a "prevailing party" did not turn solely on the question of whether or not the action was remanded, but *on the nature of the issues remanded,* which the court had never addressed *on the merits.*

tionship of the parties" and thereby transform the plaintiff into a prevailing party. *[Texas State Teachers Ass'n v.] Garland,* [489 U.S. 782,] 792–93, 109 S.Ct. 1486 [ (1989) ].

*Farrar,* 506 U.S. at 111, 113 S.Ct. 566. Although *Farrar* involved civil rights claims and fee-shifting pursuant to 42 U.S.C. § 1988(b), and the present case involves fee-shifting pursuant to the EAJA, 28 U.S.C. § 2412(d), "the standards for analyzing such claims are generally applicable to all claims arising under prevailing party fee-recovery statutes." *Yarbrough,* 209 F.3d at 703 n. 3 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and *Jenkins,* 127 F.3d at 712–13, noting that the latter case "equat[ed] standards for reviewing § 1988(b) claims and EAJA claims").

■ *iii. Procedural victories.* The Branstads are correct in their assertions (1) that there is no statutory provision like "sentence six" of § 405(g) for Social Security cases that would allow the court to retain jurisdiction over the remand of their actions to the USDA; (2) that they will have to initiate new actions to seek further judicial review of any agency determination on the merits, if it goes against them on remand; and (3) that they obtained all of the relief that they sought in the present actions for judicial review. Nevertheless, the court concludes that these facts do not make them "prevailing parties" within the meaning of The EAJA.

Again, "to qualify as a prevailing party, a ... plaintiff must obtain at least some relief on the *merits* of his claim." *Farrar,* 506 U.S. at 111, 113 S.Ct. 566 (emphasis added). However, the claims before the court so far in these cases have never gone to the merits of the agency's "wetlands" and "conversion" determinations. Specifically, Case No. C 00–3072–MWB, concerning Tract # 2024, involved only the questions of whether two determinations by the

Acting Director were arbitrary and capricious, an abuse of discretion, or contrary to law: the determination that the Branstads' administrative appeal was "mooted" by their entry into a Wetland Restoration Agreement for Tract # 2024 and the determination that prior wetland determinations in 1987 and 1991 were "unappealable." Indeed, part of the court's rationale for its decision favorable to the Branstads on the first question was precisely that a "good faith" exemption from denial of benefits on the basis of restoration would not expunge the "wetlands" violation, did not resolve the underlying issues, which are whether or not the agency's "wetlands" and "conversion" determinations were correct, or allow the Branstads' repairs of the drainage system to stand. Similarly, in Case No. C 01–3030–MWB, concerning Tract # 1475, the question presented was whether the "final" agency decision denying consideration of the Branstads' administrative appeal on the ground that the appeal was untimely was arbitrary and capricious, an abuse of discretion, and contrary to law. In both cases, the court remanded to the agency *for consideration of the merits of the Branstads' appeals of the agency's "wetlands" and "conversion" determinations.* Thus, what has been at issue on judicial review so far is *a procedural battle* concerning whether the agency had jurisdiction to reach the merits of the Branstads' administrative appeals, not the merits of the agency's "wetlands" and "conversion" determinations themselves.

In *Huey v. Sullivan,* 971 F.2d 1362 (8th Cir.1992), *cert. denied sub nom. Huey v. Shalala,* 511 U.S. 1068, 114 S.Ct. 1642, 128 L.Ed.2d 363 (1994), the Eighth Circuit Court of Appeals considered whether the plaintiff met the "prevailing party" requirement of Title VII for an award of attorney fees incurred after the district court granted the plaintiff summary judgment on the question of liability, based on

the court's finding that it had jurisdiction to hear the lawsuit and retention of jurisdiction to oversee the agency's execution of the judgment. *See Huey,* 971 F.2d at 1367. As to the plaintiff's contention that he was a "prevailing party" within the meaning of the fee-shifting provision as to litigation of the jurisdictional question, the Eighth Circuit Court of Appeals reasoned as follows:

> The Supreme Court has stated that "respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Hewitt v. Helms,* 482 U.S. 755, 760, 107 S.Ct. 2672, 2675, 96 L.Ed.2d 654 (1987). "[A]t a minimum, to be considered a prevailing party ... the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792, 109 S.Ct. 1486, 1488, 103 L.Ed.2d 866 (1989). *We agree with the district court that Huey did not prevail on any issue going to the merits of his claim after February 8, 1989.* The district court found against Huey on his claim for additional relief, and we affirm. *Huey's argument that he is a prevailing party because the district court found that it had jurisdiction to hear the lawsuit and retained jurisdiction to oversee the Agency's execution of the judgment is entirely without merit. Establishing jurisdiction is a procedural victory that does not justify fee shifting. See Hanrahan v. Hampton,* 446 U.S. 754, 759, 100 S.Ct. 1987, 1990, 64 L.Ed.2d 670 (1980) (per curiam) (procedural and evidentiary rulings may affect the disposition on the merits, but are themselves not matters on which a party can "prevail" for purposes of shifting counsel fees).

*Huey,* 971 F.2d at 1367 (emphasis added). Similarly, here, the court's rulings on judi-

cial review so far have only established that the agency has jurisdiction to hear the Branstads' administrative appeals of the merits of the agency's "wetlands" and "conversion" determinations, not withstanding purported "mootness" and the bar of purportedly "unappealable" prior wetlands determinations in one action, and the purported untimeliness of their administrative appeal in the other. However, the Branstads "did not prevail on any issue going to the merits of [their] claim[s]" that the agency's "wetlands" and "conversion" determinations are simply wrong. *Id.* As in *Huey,* the court's disposition on judicial review in each case is merely "a procedural victory that does not justify fee shifting." *Id.* To put it another way, the Branstads have certainly obtained " 'a favorable judicial statement of law in the course of litigation,' " but the question of whether the litigation will ultimately result in judgment for or against them remains open, so that fee-shifting is not warranted at this point. *See Schaefer,* 509 U.S. at 301–02, 113 S.Ct. 2625 (quoting *Hewitt v. Helms,* 482 U.S. 755, 763, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987))

The court recognizes that there may be a split in authority on the question of whether a party has "prevailed" where the plaintiff "wins" on the issues presented on judicial review, where the *only* questions presented to the court on judicial review are "procedural" or "jurisdictional." The Ninth Circuit Court of Appeals appeared to reach a conclusion contrary to that in *Huey* in *United States v. Marolf,* 277 F.3d 1156 (9th Cir.2002). In *Marolf,* the court reasoned,

> [T]he EAJA plainly states [that] we look "to the action or failure to act by the agency *upon which the civil action is based.*" 28 U.S.C. § 2412(d)(1)(B) (emphasis added). When a party challenges a government action on procedural or due process grounds alone, the merits of

the underlying [agency action] are not proper subjects for our review. [Citations omitted.] This is so because a government's procedural abuses can be as troubling as its substantive ones.

*Marolf,* 277 F.3d at 1161. Based on these principles, the court concluded that it could award fees based on a determination of whether the government's position on procedural questions was "substantially justified," without regard to "whether the forfeiture could have succeeded on the merits if the government had complied with due process." *Id.* at 1161–62. This court observes that a "due process" violation *is* a substantive violation of the plaintiff's rights, thus, victory on a "due process" claim is necessarily a determination "on the merits," but a victory on a "procedural question" is not a "substantive" victory or victory *on the merits* of the action before the agency.

On the other hand, the decision of the Eighth Circuit Court of Appeals in *Huey* does not stand alone for the proposition that merely "procedural victories" do not warrant an award of attorney fees and expenses under the EAJA. *See, e.g., Sims v. Apfel,* 238 F.3d 597, 600–02 (5th Cir. 2001) (relying, in part, on *Huey, Hanrahan,* and *Hewitt* to conclude that a plaintiff who "did not obtain anything from Appellee on the merits of her claims," but achieved only a procedural victory as "relief," was not a "prevailing party" entitled to fees under the EAJA); *A. Hirsh, Inc. v. United States,* 948 F.2d 1240, 1244–46 (Fed.Cir.1991) (also distinguishing between "victory" in a "procedural battle" and prevailing "on the merits" in the determination of whether or not a party is a "prevailing party" for purposes of an award of attorney fees and expenses under the EAJA). In any event, this court is bound to follow precedent of the Eighth Circuit Court of Appeals, and so *Huey,* which appears to this court to be on point, is controlling here.

Moreover, the court is wary of a purported analogy between a "sentence four" remand in a Social Security case, which involves the entry of judgment by the reviewing court, no retention of jurisdiction, and the possibility of an award of fees pursuant to the EAJA, and the present actions for judicial review, which likewise involved the entry of judgments without any retention of jurisdiction to review the agency's further determination on the merits. *See Rueda–Menicucci v. INS,* 132 F.3d 493 (9th Cir.1997) (invoking such an analogy to award fees pursuant to the EAJA on remand of a deportation action to the Board of Immigration Appeals (BIA)). A "sentence four" remand ordinarily involves the reviewing court's determination of the *merits* of the Social Security Administration's disability determination to the extent that the court concludes that the agency's decision on the merits is not supported by substantial evidence on the record. *See, e.g., Pottsmith v. Barnhart,* 306 F.3d 526, 528 (8th Cir. 2002). Here, the court could not properly reach the merits of the agency's "wetlands" and "conversion" determinations *to any extent,* and remanded on a "purely" procedural ground. Thus, the nature of the review here is different from the nature of the review leading to a "sentence four" remand in a Social Security disability benefits case.

Because the Branstads have thus far achieved only procedural victories, requiring the USDA to hear their administrative appeals, but no favorable determination on the merits of their contentions that the USDA's "wetlands" and "conversion" determinations are wrong, the Branstads are *not* eligible for fees and expenses under the EAJA at this time.

### B. Other Challenges

As mentioned above, in addition to "eligibility" challenges, the Secretary chal-

lenges the fee claims in these actions on a variety of grounds. Those grounds include the Secretary's contentions that her position on the issues presented was "substantially justified," so that the Branstads simply are not entitled to an award of fees and expenses, even if they are otherwise "eligible" for such an award, and her contentions regarding the amount of any fees to be awarded, if the Branstads are both eligible for and entitled to a fee award, on the basis that they have not demonstrated that any enhancement of the statutory hourly rate for attorney fees is appropriate in these cases, some of the hours claimed were duplicative, and that the Branstads are not entitled to any award of fees for time spent on administrative proceedings. However, in light of the court's conclusion that the Branstads are *not* "eligible" for any award of fees and expenses under the EAJA at this time, the court finds it unnecessary to reach the Secretary's additional challenges to the Branstads' entitlement to or the amount of any fees at any particular hourly rate.

### III. CONCLUSION

Although the Secretary made numerous challenges to an award of fees and expenses pursuant to the EAJA in these cases, the court finds that one issue is dispositive of the fee claims. The Branstads are not eligible for an award of fees and expenses pursuant to the EAJA in either case, because they are not "prevailing parties" within the meaning of the statute. Consequently, the Branstads' application for attorney fees and costs in each case is **denied without prejudice** to reassertion when and if they obtain relief on the merits of their claims.

**IT IS SO ORDERED.**